[19 NYS3d 1]

NOMURA HOME EQUITY LOAN, INC., SERIES 2006-FM2, by HSBC Bank USA, National Association, Solely in its Capacity as Trustee, Respondent-Appellant, v NOMURA CREDIT & CAPITAL, INC., Appellant-Respondent. NOMURA HOME EQUITY LOAN, INC., SERIES 2007-3, by HSBC Bank USA, National Association, Solely in its Capacity as Trustee, Respondent-Appellant, v NOMURA CREDIT & CAPITAL, INC., Appellant-Respondent. NOMURA ASSET ACCEPTANCE CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AF 2, by HSBC Bank USA, National Association, as Trustee, Appellant-Respondent, v NOMURA CREDIT & CAPITAL, INC., Respondent-Appellant. NOMURA HOME EQUITY LOAN, INC., HOME EQUITY LOAN TRUST, SERIES 2007-2 by HSBC Bank USA, National Association, as Trustee, Appellant-Respondent, v NOMURA CREDIT & CAPITAL, INC., Respondent-Appellant.

First Department, October 13, 2015

**APPEARANCES OF COUNSEL**

*Shearman & Sterling LLP*, New York City (*Agnès Dunogué* and *Joseph J. Frank* of counsel), for Nomura Credit & Capital, Inc., appellant-respondent/respondent-appellant.

*Holwell Shuster & Goldberg LLP*, New York City (*Michael S. Shuster, Dwight A. Healy* and *Daniel M. Sullivan* of counsel), for Nomura Asset Acceptance Corporation Mortgage Pass-Through Certificates, Series 2006-AF2, by HSBC Bank USA, National Association, as Trustee and Another, appellants-respondents.

*Kasowitz, Benson, Torres & Friedman LLP*, New York City (*Christopher P. Johnson, Zachary W. Mazin* and *Jenny H. Kim* of counsel), for Nomura Home Equity Loan, Inc., Series 2006-FM2, by HSBC Bank USA, National Association, Solely in its Capacity as Trustee, and Another, respondents-appellants.

**OPINION OF THE COURT**

SWEENY, J.

These appeals stem from the securitization of residential mortgage-backed securities (RMBS) by Nomura Credit &

Capital, Inc., the defendant in each case. The allegations and arguments advanced in the parties' briefs are, with certain exceptions, materially similar throughout these four cases. Therefore, the factual and legal issues will be addressed in a unified manner, with pertinent differences noted where necessary.

As a starting point, it is necessary to understand how the debt instruments involved in these cases were created. Generally, the securitization process involves packaging numerous mortgage loans into a trust, which in turn issues debt securities, which it then sells to investors. The payments made by the borrowers of the underlying mortgages are "passed through" to the investors holding the securities, who in turn receive distributions to the extent and in the priority provided for in the securitization documents. (*See MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 87 AD3d 287, 290 [1st Dept 2011].)

More specifically, a "sponsor," which is an affiliate of a bank (such as defendant herein), acquires mortgage loans from the institutions that actually made the loans to individual borrowers. The sponsor selects the loans it wishes to purchase and has unrestricted access to the underlying documentation associated with each loan. It then sells the loans via a mortgage loan purchase agreement (MLPA) to a special-purpose entity affiliated with the sponsor known as the "depositor." The depositor immediately transfers or "deposits" the mortgage loans into a trust, which then issues securities to the depositor, which in turn sells them to investors through an underwriter. The proceeds of the sale of these securities ultimately finance the purchase of the mortgage loans. A trustee then holds the loans and administers the trust for the benefit of the investors. The depositor, trustee and sponsor then enter into a pooling and servicing agreement (PSA) with a "servicer," which is engaged to collect payments on the underlying loans in a manner consistent with the securitization documents. (*See Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, N.A. v DB Structured Prods., Inc.*, 5 F Supp 3d 543, 547-548 [SD NY 2014].) This process was followed in each of these four cases.

Certain provisions of the MLPAs form the core of the disputes between these parties. In section 7 of each MLPA, defendant represented and warranted as follows:

> "The written statements, reports and other documents prepared and furnished or to be prepared

and furnished by [defendant] pursuant to this Agreement or in connection with the transactions contemplated hereby taken in the aggregate do not contain any untrue statement of material fact or omit to state a material fact necessary to make the statements contained therein not misleading."

The parties refer to this as the "No Untrue Statement Provision." The "other documents" referenced in this provision included prospectuses, mortgage loan files and loan tapes.[1]

In section 8 of each MLPA, defendant made specific representations and warranties about each loan, including, as pertinent to these appeals, the following:

(i)/(1)[2] "Information provided to the Rating Agencies . . . is true and correct according to the Rating Agency requirements";

(ii)/(2) "No fraud has taken place on the part of the Mortgagor or any other party involved in the origination or servicing of the Mortgage Loan";

(xxix)/(29) "The Mortgage File contains an appraisal of the related Mortgaged Property which was made by a qualified appraiser, duly appointed by the related originator and was made in accordance with the Financial Institutions Reform, Recovery and Enforcement Act of 1989 and the Uniform Standards of Professional Appraisal Practice";

(xli)/(42) "Each Mortgage Loan is and will be a mortgage loan arising out of the originator's practice in accordance with the originator's underwriting guidelines."[3]

The parties reference this as the "Mortgage Representations."

Section 9 (a) of each MLPA contains the following remedy for missing documents and breaches of the mortgage representations:

---

**1.** Loan tapes contain "key statistics about each underlying loan in the pool" (*MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 87 AD3d at 292).

**2.** The numbering of the subsections is Roman in three of the MLPAs and Arabic in the remaining MLPA. Also, subsection (xli) in the three MLPAs is subsection (42) in the remaining MLPA. The language, however, is the same.

**3.** "[U]nderwriting guidelines require an originator to evaluate the borrower's ability and willingness to repay a mortgage loan" (*Federal Hous. Fin. Agency v Nomura Holding Am., Inc.*, 2015 WL 2183875, *6, 2015 US Dist LEXIS 61516, *23 [SD NY, May 11, 2015, No. 11cv6201 (DLC)]).

"Upon discovery by the Seller . . . or any assignee, transferee or designee of the Purchaser of any materially defective document in, or that any material document was not transferred by the Seller, . . . or of a breach of any of the representations and warranties contained in Section 8 that materially and adversely affects the value of any Mortgage Loan . . . the party discovering such breach shall give prompt written notice to the Seller. . . . [T]he Seller promptly shall deliver such missing document or cure such defect or breach in all material respects or, in the event the Seller cannot deliver such missing document or cannot cure such defect or breach, the Seller shall . . . repurchase the affected Mortgage Loan at the Purchase Price."

The term "Purchase Price" is defined as "an amount equal to the sum of (i) 100% of the outstanding principal balance of the Mortgage Loan as of the date of such purchase plus, (ii) 30 days' accrued interest thereon."

Section 9 (c) of each MLPA contains the following limitation on remedies: "[T]he obligations of the Seller set forth in this Section 9 to cure or repurchase a defective Mortgage Loan . . . constitute the sole remedies of the Purchaser against the Seller respecting a missing document or a breach of the representations and warranties contained in Section 8." This is the "sole remedy" provision.

Finally, section 13 of each MLPA provides that "[a]ll rights and remedies of the Purchaser under this Agreement are distinct from, and cumulative with, any other rights or remedies under this Agreement or afforded by law or equity and all such rights and remedies may be exercised concurrently, independently or successively."

In section 2.03 of each of the PSAs, defendant made certain representations and warranties, including a statement that "[t]he representations and warranties set forth in Section 8 of the [MLPA] are true and correct as of the Closing Date." Section 2.03 further provided the following remedy for a breach:

"Upon discovery by any of the parties hereto of a breach of a representation or warranty set forth in . . . Section 8 of the [MLPA] that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, the party discovering such breach shall give prompt written notice thereof to the other parties. The Sponsor [defend-

ant] hereby covenants with respect to the representations and warranties set forth in . . . Section 8 of the [MLPA], that within ninety days of the discovery of a breach of any representation or warranty set forth therein that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan, it shall cure such breach in all material respects and, if such breach is not so cured, . . . repurchase the affected Mortgage Loan or Mortgage Loans from the Trustee at the Purchase Price."

Finally, section 2.03 tracks the language of section 9 (c) of each MLPA by providing that the sponsor's obligation to cure or repurchase any mortgage loan to which a breach has occurred shall be the sole remedies against the sponsor for any such breach.

The closing date for the Series 2006-FM2 deal (appeal No. 15524) was October 31, 2006. The closing date for the Series 2007-3 deal (appeal No. 15525) was April 30, 2007.

We turn now to the specific facts of each case in the order in which they were commenced.

## Appeal No. 15526

On April 19, 2012, the trustee of the Series 2006-AF2 trust gave written notice to defendant of breaches affecting 454 loans. Defendant failed to either cure the breaches or repurchase the loans within the required 90 days, and the trustee commenced an action on July 27, 2012. Plaintiff filed an amended complaint on February 26, 2013. The complaint alleged, among other things, that a forensic review of 1,004 of the 2,717 mortgage loans in the trust revealed that in excess of 45% of the loans breached defendant's representations and warranties, which, because of the large number of defective loans, made "recourse to the repurchase remedy impractical." The complaint alleged that defendant conducted due diligence on these loans and, because of the systemic nature of the breaches, it had to have been aware of the defects and failed to give notice to plaintiff as required by section 9 (a) of the MLPA. The three causes of action in the complaint relevant to this appeal are (1) breach of the MLPA and PSA with respect to the 454 loans mentioned in the breach notice, as well as for breach of the duty of good faith and fair dealing, entitling plaintiff to damages not limited to the contractual repurchase remedy; (2)

rescissory damages; and (3) in the alternative, specific performance requiring defendant to repurchase the breaching mortgage loans.

## Appeal No. 15524

On July 20, 2012, the trustee of the Series 2006-FM2 trust gave written notice to defendant regarding missing documentation with respect to specific loans and requested that defendant repurchase those loans. On August 6, 2012, the trustee gave written notice to defendant of breaches affecting 23 loans, as well as defective documentation with respect to 87 loans, and demanded that defendant repurchase all loans in the trust due to the "systemic nature of the breaches." This was followed on August 22 by written notice of breaches affecting 2,429 loans, with another demand to repurchase all loans in the trust. On October 29, written notice was given regarding breaches affecting an additional 96 loans, as well as defective documentation with respect to 88 loans.

The trustee commenced an action on October 29, 2012 by service of a summons with notice. Additional breach notices were thereafter sent to defendant on February 20, March 5, April 1, April 4 and April 15, 2013.

On April 16, 2013, plaintiff filed its complaint, alleging that at least 2,080 of the 5,714 loans in the trust did not conform to the mortgage representations in a manner that materially and adversely affected the value of those loans. The complaint further alleged that "at least 2,554 Mortgage Loan Files could not even be reviewed," as the loan servicer either did not have the files or was missing critical documentation. The complaint also alleged that, due to the systemic nature of the breaches, defendants had to have been aware of the defects and failed to give plaintiff notice as required by the MLPA.

The complaint stated four causes of action seeking the following relief: (1) specific performance of defendant's obligation under the PSA and MLPA to repurchase the defective loans; (2) damages for defendant's breach of the obligation to repurchase; (3) damages for defendant's alleged violation of the no untrue statement provision; and (4) rescission or, in the alternative, rescissory damages.

## Appeal No. 15527

On August 17, 2012, the trustee of the Series 2007-2 trust gave written notice to defendant of breaches affecting 256

loans, followed on August 24 with a written notice of breaches affecting an additional 609 loans. On September 6 and 7, additional breach notices were sent to defendant.

On January 30, 2013, the trustee commenced an action, alleging, inter alia, that of the 5,136 loans in the trust, at least 2,652 breached defendant's representations and warranties. It further alleged that a forensic review determined that at least 2,652 of the 3,189 loan files reviewed—some 83%—failed to comply with at least one of defendant's representations and warranties. The four causes of action stated and requested relief similar to those in appeal No. 15524.

## Appeal No. 15525

On November 8, 2012, the trustee of the Series 2007-3 trust gave written notice to defendant of breaches affecting 121 loans, as well as defective documentation with respect to 594 loans, and demanded repurchase of all the loans in the trust. Written notices were sent to defendant on December 12, 2012 (breaches of 43 loans, defective documentation for 27 loans, missing documentation on 1,167 loans), January 17, 2013 (breaches on 42 loans, defective documentation on 25 loans), and February 22 (breaches on 54 loans). Each notice demanded repurchase of all loans.

On March 28, 2013, the trustee commenced an action. The complaint alleged four causes of action and sought relief similar to that requested in appeal No. 15524.

In each of the above actions, defendant moved to dismiss the complaints pursuant to CPLR 3211 (a) (1) and (7).

The motion court rejected plaintiffs' contention that the failure to comply with the repurchase obligation under the sole remedy provision of the contracts gave rise to an independent breach of contract cause of action. However, it also rejected defendant's contention that damages are never available under the sole remedy provision, and that the only relief available is specific performance of the repurchase obligations contained in the agreements. It also rejected defendant's argument that liquidated loans are not subject to the repurchase protocol.

Concerning the claims based on the breach of the no untrue statement provision of the MLPA (section 7), the motion court dismissed those claims as duplicative of the breach of the mortgage representations provision of the MLPA and PSA (section 8). The court dismissed the causes of action for rescission or rescissory damages, holding that those claims were waived

by plaintiff's agreeing to the sole remedy provision of the MLPA. It did find, however, that plaintiff's allegations as to defendant's discovery of the breaches of the mortgage representations and its failure to notify plaintiff pursuant to its obligations under the contracts were sufficient, at this pleading stage, to survive defendant's motion to dismiss.

It is axiomatic that, on a motion brought pursuant to CPLR 3211, our analysis of a plaintiff's claims is limited to the four corners of the pleading. The allegations contained in the complaint must be given a liberal construction and accepted as true (*Johnson v Proskauer Rose LLP*, 129 AD3d 59, 67 [1st Dept 2015], citing *Leon v Martinez*, 84 NY2d 83, 87-88 [1994]). Moreover, the plaintiff must be given "the benefit of every possible favorable inference" (*Landon v Kroll Lab. Specialists, Inc.*, 22 NY3d 1, 5 [2013] [internal quotation marks omitted]). If there are any ambiguities in the allegations in the complaint, they must be resolved in favor of the plaintiff (*JF Capital Advisors, LLC v Lightstone Group, LLC*, 25 NY3d 759, 764 [2015]; *Snyder v Bronfman*, 13 NY3d 504, 506 [2009]). A reviewing court must "bear in mind that '[w]hether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss' " (*Johnson v Proskauer Rose LLP*, 129 AD3d at 67 [alteration in original], quoting *EBC I, Inc. v Goldman, Sachs & Co.*, 5 NY3d 11, 19 [2005]). Rather, a court's duty is to "determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon v Martinez*, 84 NY2d at 87-88; *Faison v Lewis*, 25 NY3d 220, 224 [2015]).

The crux of the dispute between these parties in all these cases concerns the scope and application of the "sole remedy" language set forth above. Defendant contends that, in the remedy limitations contained in sections 9 (c) of the MLPAs and 2.03 of the PSAs, that being repurchase or cure of the defective loan, the motion court erred by allowing plaintiffs to seek monetary damages if cure or repurchase of a defective mortgage loan was impossible. Under defendant's interpretation of the "sole remedy" clause, loans that have been foreclosed upon or liquidated cannot be repurchased and, by agreeing to those provisions, plaintiff accepted the risk of loss such an event would entail. However, such an interpretation would leave plaintiffs without a remedy with respect to those loans, as their only recourse would be to commence an action for specific performance, which would be impossible to fulfill. The present state of the law does not support defendant's contention.

New York law has long held that contracting parties are generally free to limit their remedies. "A limitation on liability provision in a contract represents the parties' [a]greement on the allocation of the risk of economic loss in the event that the contemplated transaction is not fully executed, which the courts should honor" (*Metropolitan Life Ins. Co. v Noble Lowndes Intl.*, 84 NY2d 430, 436 [1994]). Therefore, by the terms of the "sole remedy" clause, the agreements limit plaintiffs to seeking an order of specific performance requiring defendant to repurchase the defective loans at the purchase price defined in those agreements, or to cure the defects in those loans.

However, specific performance is an equitable remedy. In the RMBS context, most courts have repeatedly held that "while a provision providing for equitable relief as the 'sole remedy' will generally foreclose alternative relief, 'where the granting of equitable relief appears to be impossible or impracticable, equity may award damages in lieu of the desired equitable remedy' " (*Bank of N.Y. Mellon v WMC Mtge., LLC*, 2015 WL 2449313, \*2, 2015 US Dist LEXIS 67367, \*6 [SD NY, May 22, 2015, No. 12cv7096 (DLC)], quoting *Doyle v Allstate Ins. Co.*, 1 NY2d 439, 443 [1956]; *see also Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, N.A. v DB Structured Prods., Inc.*, 5 F Supp 3d at 554; *MASTR Adjustable Rate Mtges. Trust 2006-OA2 v UBS Real Estate Sec. Inc.*, 2013 WL 4399210, \*3, 2013 US Dist LEXIS 115532, \*10-11 [SD NY, Aug. 15, 2013, No. 12 Civ 7322(HB)]; *Wiebusch v Hayes*, 263 AD2d 389, 391 [1st Dept 1999]).[4] Such a rule makes sense, for to hold otherwise would create a "perverse[ ]" incentive for a sponsor "to fill the trust with junk mortgages that would expeditiously default so that they could be released, charged off, or liquidated before a repurchase claim is made" (*ACE Sec. Corp. v DB Structured Prods., Inc.*, 40 Misc 3d 562, 569 [Sup Ct, NY County 2013], *revd on other grounds* 112 AD3d 522 [1st Dept 2013], *affd* 25 NY3d 581 [2015]).

Here, the sheer volume of defective loans in each of these trusts proves the rectitude of the foregoing precedents. As noted above, it was alleged in No. 15526 that 45% of the loans

---

4. *But see Citigroup Mtge. Loan Trust 2007-AMC3 ex rel. U.S. Bank, N.A. v Citigroup Global Mkts. Realty Corp.*, 2014 WL 1329165, \*5, 2014 US Dist LEXIS 47252, \*16 (SD NY, Mar. 31, 2014, No. 13 Civ 2843[GBD]) (holding that the sole remedy provision of the MLPA precludes an action for monetary damages).

reviewed in a forensic sampling revealed breaches of defendant's warranties and representations. The allegations in No. 15524 were even more startling: 2,080 of 5,714 loans did not conform to defendant's representations and another 2,554 loans could not even be reviewed because of missing files and/or documentation. Of the 5,136 loans in the trust in No. 15527, 2,652 breached the representations and warranties and approximately 83% of the files reviewed failed to comply with at least one representation or warranty. Similar numbers of defective loans were alleged in No. 15525. The allegations by plaintiffs that these breaches could hardly have escaped defendant's notice because of the systemic nature of these defects only lends additional support for the precedents cited above. Again, at this stage of the proceedings, these allegations must be accepted as true; whether plaintiffs may ultimately prevail need not be addressed now.

The motion court therefore correctly held that plaintiffs may pursue monetary damages with respect to any defective mortgage loan in those instances where cure or repurchase is impossible.

However, the court erred in not allowing plaintiffs to pursue damages for breach of section 7 (as opposed to section 8) of the MLPA. By its plain language, section 9 (c) says that "[t]he obligations of the Seller [i.e., defendant] . . . to cure or repurchase a defective Mortgage Loan . . . constitute the sole remedies of the Purchaser against the Seller *respecting a missing document or a breach of the representations and warranties contained in Section 8*" (emphasis added). Similarly, in section 2.03 (e) of the PSA, which states that "the obligation under this Agreement of the Sponsor [i.e., defendant] to cure [or] repurchase . . . any Mortgage Loan as to which a breach has occurred or is continuing shall constitute the sole remedies against the Sponsor respecting such breach available to Certificateholder . . . or the Trustee," "such breach" refers back to "a breach of any representation or warranty set forth [in *section 8 of the MLPA*] that materially and adversely affects the interests of the Certificateholders in any Mortgage Loan" (emphasis added). By contrast, the sole remedy provisions in *Ambac Assur. Corp. v EMC Mtge. LLC* (121 AD3d 514 [1st Dept 2014]), relied on by defendant, were more broadly worded, stating that those provisions were applicable to "this Agreement," not as here, to specific sections of the MLPA. (*See id.* at 516, 518.) Had these "very sophisticated parties" desired to have the

sole remedy provisions apply to both section 8 *and* section 7 breaches, "they certainly could have included such language in the contracts. They did not do so, and this Court will not do so now 'under the guise of interpreting the writing' " (*MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 105 AD3d 412, 413 [1st Dept 2013], quoting *Reiss v Financial Performance Corp.*, 97 NY2d 195, 199 [2001]). In any event, section 13 of the MLPA provides that remedies are cumulative.

With respect to plaintiffs' causes of action for rescission, even if section 9 (c) of the MLPA and section 2.03 (e) of the PSA did not waive plaintiffs' right to seek such relief, rescission would be unwarranted because damages are available (*see Rudman v Cowles Communications*, 30 NY2d 1, 13 [1972]).

With respect to *2006-AF2* (No. 15526) and *2007-2* (No. 15527), the court correctly declined to permit plaintiffs to pursue damages for breach of the implied covenant of good faith and fair dealing since the claim is duplicative of the breach of contract claim (*see e.g. MBIA Ins. Corp. v Countrywide Home Loans, Inc.*, 87 AD3d at 297). It also correctly declined to permit plaintiffs to pursue damages for defendant's failure to repurchase defective loans (*see ACE Sec. Corp.*, 25 NY3d at 589). However, the court erred in not allowing plaintiffs to pursue damages for defendant's failure to give prompt written notice after it discovered material breaches of the representations and warranties in section 8 of the MLPA.

Concerning *2006-FM2* (No. 15524) and *2007-3* (No. 15525), the court correctly refused to dismiss claims relating to loans that plaintiffs failed to mention in their breach notices or that were mentioned in breach notices sent less than 90 days before plaintiffs commenced their actions. Unlike the situation in *ACE* (112 AD3d at 522-523), there were some timely claims in these cases. Hence, a complaint amended to add the claims at issue would have related back to the original complaints (*see Koch v Acker, Merrall & Condit Co.*, 114 AD3d 596, 597 [1st Dept 2014]). Plaintiffs' presuit letters put defendant on notice that the certificateholders whom plaintiffs (as trustees) represented were investigating the mortgage loans and might uncover additional defective loans for which claims would be made. Furthermore, in addition to sending defendant notices of breach, plaintiffs allege that defendant already knew, based on its own due diligence, that certain loans in the trusts at issue breached its representations and warranties (*see Ace Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 ex rel. HSBC Bank USA, N.A. v DB Structured Prods., Inc.*, 5 F Supp 3d at 559).

Additionally, with respect to these two cases, the court correctly found that plaintiffs stated claims for breach of subsections (i)/(1), (ii)/(2), (xxix)/(29), and (xli)/(42) of section 8 of the MLPA. Unlike the plaintiffs in *Newman v Wells Fargo Bank, N.A.* (85 AD3d 435 [1st Dept 2011]) and *Mandarin Trading Ltd. v Wildenstein* (65 AD3d 448 [1st Dept 2009], *affd* 16 NY3d 173 [2011]), relied on by defendant, the plaintiffs here do not bring fraud claims based on inflated appraisals; rather, they allege that defendant breached a representation and warranty because at least some appraisals were not made in accordance with the Uniform Standards of Professional Appraisal Practice. Unlike *Footbridge Ltd. v Countrywide Home Loans, Inc.* (2010 WL 3790810, 2010 US Dist LEXIS 102134 [SD NY, Sept. 28, 2010, No. 09 Civ 4050(PKC)]), on which defendant also relies, the cases at bar do not involve claims of securities fraud and common-law fraud, which must meet heightened pleading requirements. Plaintiffs are suing for breach of contract, not fraud (*see LaSalle Bank N.A. v Citicorp Real Estate, Inc.*, 2002 WL 31729632, *3, 2002 US Dist LEXIS 23323, *10-11 [SD NY, Dec. 5, 2002, No. 01 Civ 4389(AGS)] [rejecting defendant's attempt to transform plaintiff's breach of warranty claim into a fraud claim]; *ACE Sec. Corp. v DB Structured Prods., Inc.*, 41 Misc 3d 1229[A], 2013 NY Slip Op 51933[U],*3 [Sup Ct, NY County 2013] ["investor put-back actions are not fraud cases"]).

We have considered the appealing parties' remaining contentions for affirmative relief and find them to be without merit.

Accordingly, the order of the Supreme Court, New York County (Marcy S. Friedman, J.), entered July 18, 2014 in *2006-FM2* (No. 15524), which granted defendant's motion to dismiss the complaint as to the third and fourth causes of action and denied the motion as to the first and second causes of action, should be modified, on the law, to deny the motion as to the third cause of action, and otherwise affirmed, without costs. The order of the same court and Justice, entered on or about July 18, 2014 in *2007-3* (No. 15525), which granted defendant's motion to dismiss the complaint as to the third and fourth causes of action and denied the motion as to the first and second causes of action, should be modified, on the law, to deny the motion as to the third cause of action, and otherwise affirmed, without costs. The order of the same court and Justice, entered July 22, 2014 in *2006-AF2* (No. 15526), which, to the extent appealed from as limited by the briefs, limited the relief available under the first cause of action to specific performance

of the repurchase protocol or, if loans cannot be repurchased, to damages consistent with its terms, limited the first cause of action to the alleged breaches of the mortgage representations, granted defendant's motion to dismiss the second cause of action, and denied the motion as to the third cause of action, should be modified, on the law, to permit plaintiffs to seek damages on the first cause of action for breach of the no untrue statement provision (section 7 of the MLPA) and for failure to give prompt written notice after discovering material breaches of the representations and warranties in section 8 of the MLPA, and otherwise affirmed, without costs. The order of the same court and Justice, entered July 22, 2014 in *2007-2* (No. 15527), which, to the extent appealed from as limited by the briefs, limited the relief available under the first cause of action to specific performance of the repurchase protocol or, if loans cannot be repurchased, to damages consistent with its terms, limited the first cause of action to the alleged breaches of the mortgage representations, granted defendant's motion to dismiss the second cause of action, and denied the motion as to the third cause of action, should be modified, on the law, to permit plaintiffs to seek damages on the first cause of action for breach of the no untrue statement provision (section 7 of the MLPA) and for failure to give prompt written notice after discovering material breaches of the representations and warranties in section 8 of the MLPA, and otherwise affirmed, without costs.

MAZZARELLI, J.P., ACOSTA and KAPNICK, JJ., concur.

Order, Supreme Court, New York County, entered July 18, 2014 in *2006-FM2* (No. 15524), modified, on the law, to deny the motion as to the third cause of action, and otherwise affirmed, without costs.

Order, same court and Justice, entered on or about July 18, 2014 in *2007-3* (No. 15525), modified, on the law, to deny the motion as to the third cause of action, and otherwise affirmed, without costs.

Order, same court and Justice, entered July 22, 2014 in *2006-AF2* (No. 15526), modified, on the law, to permit plaintiffs to seek damages on the first cause of action for breach of the no untrue statement provision (section 7 of the MLPA) and for failure to give prompt written notice after discovering material breaches of the representations and warranties in section 8 of the MLPA, and otherwise affirmed, without costs.

Order, same court and Justice, entered July 22, 2014 in *2007-2* (No. 15527), modified, on the law, to permit plaintiffs to

seek damages on the first cause of action for breach of the no untrue statement provision (section 7 of the MLPA) and for failure to give prompt written notice after discovering material breaches of the representations and warranties in section 8 of the MLPA, and otherwise affirmed, without costs.