Financial Guaranty Insurance Company, Plaintiff,

against
Morgan Stanley ABS Capital I Inc., MORGAN STANLEY MORTGAGE CAPITAL HOLDINGS LLC, MORGAN STANLEY & CO. LLC, as successor to MORGAN STANLEY & CO. INC., MORGAN STANLEY, and SAXON MORTGAGE SERVICES, INC., Defendants.


652914/2014

Counsel for plaintiff Financial Guaranty Insurance Company:
PATTERSON BELKNAP WEBB & TYLER LLP
Erik Haas
Henry J. Ricardo
Jonathan Hatch
Counsel for defendants Morgan Stanley ABS Capital I Inc., Morgan Stanley Mortgage Capital Holdings LLC, Morgan Stanley & Co. LLC, as successor to Morgan Stanley & Co. Inc., Morgan Stanley, and Saxon Mortgage Services, Inc.:
DAVIS POLK & WARDWELL LLP
James P. Rouhandeh
Brian S. Weinstein
Stefani L. Johnson
Lena H. Hughes


Marcy Friedman, J.

This action for fraud and breach of contract is brought by Financial Guaranty Insurance Company (FGIC), a monoline insurer that issued a financial guaranty insurance policy guaranteeing payments on certain certificates that were issued in a residential mortgage-backed securitization (RMBS) transaction known as MSAC 2007-NC4 (Transaction). The parties to the Transaction were defendant Morgan Stanley ABS Capital I Inc. (MSAC) as Depositor; defendant Morgan Stanley Mortgage Capital Holdings LLC (MSMC) as Sponsor; defendant Morgan Stanley & Co. LLC, as successor to Morgan Stanley & Co. Inc. (MS & Co), as Underwriter; and defendant Saxon Mortgage Services, Inc. (Saxon) as Servicer. (Compl., ¶¶ 19-22.) Defendant Morgan Stanley (MS) is the parent and sole owner of MSAC, MSMC, MS & Co [*2]and Saxon. (Id., ¶ 23.)[FN1]
The loans underlying the Transaction were originated by non-party New Century Mortgage Corp. (New Century). MSMC's predecessor purchased the loans in 2007 at an auction sale conducted in connection with New Century's bankruptcy proceeding. (Id., ¶¶ 2, 35.) Defendants move to dismiss the complaint pursuant to CPLR 3211.
FGIC alleges that Morgan Stanley made extensive pre-contractual oral misrepresentations regarding its due diligence as to the New Century loans. (Compl., ¶¶ 44-50.) FGIC also alleges that Morgan Stanley made misrepresentations, in the mortgage loan tapes provided to FGIC and in the offering documents, about the quality and characteristics of the loans. (Id., ¶¶ 51-60.) In addition, Morgan Stanley made contractual representations and warranties to FGIC which, FGIC contends, restated these misrepresentations. (Id., ¶¶ 42-43, 80-94.)
The complaint pleads seven causes of action, including a first for fraudulent inducement against all defendants except Saxon; a second, for breach of warranties against MSAC, MSMC and MS; a third, for material breach of the Insurance Agreement against MSAC, MSMC and MS; a fourth, for "breach and frustration of [the] repurchase protocol" against MSMC and MS; a fifth, for reimbursement against MSMC and MS; a sixth, for breach of the PSA and Side Letter Agreement against Saxon and MS; and a seventh, for breach of warranties against Saxon, MSAC and MS.[FN2]
Morgan Stanley does not delineate the specific causes of action as to which it seeks dismissal.
Nearly all of the issues that are raised on this motion were addressed on substantially similar pleadings in three recent decisions by this court in the RMBS monoline insurance litigation: Financial Guaranty Insurance Co. v Morgan Stanley ABS Capital I Inc. (2017 NY Slip Op 30136[U], 2017 WL 228195, Jan. 19, 2017, No. 652853/14) (FGIC I), which determined a motion to dismiss this monoline insurer's breach of warranty claims in connection with a separate NIMs transaction;[FN3]
and in Ambac Assurance Corp. v Countrywide Home Loans, Inc. (2016 NY Slip Op 32482[U], 2016 WL 7374210, Dec. 19, 2016, No. 653979/14) (Ambac I) and Ambac Assurance Corp. v Nomura Credit & Capital, Inc. (2016 WL 7475831, Dec. 29, 2016, No. 651359/13) (Ambac II), which both determined motions to dismiss a monoline insurer's fraudulent inducement claims.[FN4]
The parties are referred to these decisions for a full discussion of [*3]the issues, which will not be repeated here.
Morgan Stanley argues that FGIC's claims for future damages must be dismissed because they are barred by a provision of the Insurance Agreement,[FN5]
 seek unrecoverable rescissory damages, and are speculative. These arguments are rejected for the reasons stated, and on the authorities cited, in FGIC I (2017 WL 228195, at * 3-5). 
Here, Morgan Stanley also argues that future damages may not be recovered in connection with the fraudulent inducement claim because damages for fraud are limited, under the out-of-pocket rule, to the "'actual pecuniary loss sustained as a direct result of the wrong.'" (Defs.' Memo. In Supp., at 10, quoting Continental Cas. Co. v PricewaterhouseCoopers, LLP, 15 NY3d 264, 271 [2010].) Morgan Stanley fails, however, to cite any authority that actual pecuniary loss cannot be established by a reasonably certain projection of future damages. As held in FGIC I, whether such damages can ultimately be proved is an issue that can only be determined on a factually developed record. (2017 WL 228195, at * 5, 8.) 
Morgan Stanley further argues that FGIC's fraudulent inducement claim must be dismissed as duplicative of its breach of contract claims because the misrepresentations that allegedly induced FGIC to enter into the Transaction were also the subject of written contractual representations and warranties. This argument fails for the reasons stated, and on the authorities cited, in Ambac II (2016 WL 7475831, at * 4-5). The argument that this claim is not pleaded with sufficient particularity is also without merit. (See id., at * 5.) 
In addition, Morgan Stanley argues here that the fraudulent inducement claim is not properly pleaded because the complaint fails to plead damages distinct from the damages sought on the breach of contract claims. (Defs.' Memo. In Supp., at 18.) As Morgan Stanley notes, there is a body of case law in which fraud claims have been held duplicative of breach contract claims based, in part, on the fact that the complaint "seeks the same damages" on both claims. (See e.g. Mosaic Caribe, Ltd. v AllSettled Group, Inc., 117 AD3d 421, 422-423 [1st Dept 2014].) Morgan Stanley fails to cite, and this court is unaware, of any appellate decision in the RMBS litigation that has held fraud and breach of warranty claims duplicative on this basis. As discussed in Ambac I in the fraud context (2016 WL 7374210, at * 15-19), and more extensively in FGIC I in the breach of warranty context (2017 WL 228195, at * 7-8), the standards for pleading and proof of damages, and the precise damages that may be recoverable, have been the subject of considerable confusion in the monoline insurer RMBS litigation. Without detailed analysis of the damages sought and a record that is factually developed as to the proof to be adduced in support of the requests for damages, the court cannot determine whether, or to what extent, the damages under the fraud and breach of warranty claims are duplicative.
Morgan Stanley makes a related argument that FGIC's breach of contract claims are limited by the sole remedy provisions in the governing agreements.[FN6]
(Defs.' Memo. In Supp., at [*4]10.) Even assuming, without deciding, that the sole remedy provisions apply to FGIC's claims for breaches of representations and warranties regarding the individual mortgage loans (see Insurance Agreement, § 5.01 [a]; RWA, § 4 [c]; PSA, § 2.03 [q]), Morgan Stanley does not dispute that FGIC may be entitled to recover at least past claims payments. (See Defs.' Reply Memo., at 2.) Nor does it analyze the effect of Insurance Agreement § 3.03 (b) on recovery of claims payments.[FN7]
That section provides, in pertinent part: 
"Anything herein or in any Operative Document [including the PSA and RWA] to the contrary notwithstanding, the Sponsor agrees to pay to the Certificate Insurer, and the Certificate Insurer shall be entitled to reimbursement from the Sponsor and shall have full recourse against the Sponsor for, (i) any payment made under the Certificate Insurance Policy arising as a result of the Sponsor's failure to substitute for or deposit an amount in respect of any defective Mortgage Loan as required pursuant to the [PSA] or [RWA] [together with specified interest] . . . and (ii) any payment made under the Certificate Insurance Policy arising as a result of the Sponsor's failure to pay or deposit any amount required to be paid or deposited pursuant to the Operative Documents [together with specified interest] . . . ."
(See also Insurance Agreement, § 3.03 [c] [Servicer's reimbursement obligations].) The impact of the sole remedy provisions, in light of the other remedies provisions in the Insurance Agreement, on the precise damages that are recoverable under each of FGIC's various causes of action, and against each of the defendants, is discussed in only the most cursory fashion in the briefs.
Morgan Stanley also contends that FGIC's fraudulent inducement claim fails to plead justifiable reliance as a matter of law. Here, FGIC alleges that its due diligence included extensive discussions with, and its receipt of oral representations from, Steven Shapiro, Morgan Stanley's Vice President, as to the extent of Morgan Stanley's due diligence on the New Century loans (Compl., ¶¶ 38-41, 44-50); modeling of the expected performance of the Transaction, based on the loan tapes provided by Morgan Stanley (id., ¶¶ 51-55); and review of representations in the Offering Documents (id., ¶¶ 56-60), and of shadow ratings (i.e. ratings assigned by the rating agencies without consideration of the protection afforded by a financial guaranty policy) (id., ¶¶ 61-63). Moreover, FGIC obtained express written warranties in the Insurance Agreement, which contained a provision in which the Sponsor, Depositor, and Servicer represented that the representations and warranties they had made in the underlying [*5]documents by which the Transaction was effectuated were true and correct as of the date made, and that these representations and warranties were made "to, and for the benefit of, the Certificate Insurer. . . ." (Insurance Agreement § 2.01 [n].) The underlying documents, in turn, contained representations and warranties about the quality and characteristics of the loans. (See e.g. Representations and Warranties Agreement, dated as of June 20, 2007 [RWA], § 2 & Exh. I [Sponsor's representations].) These allegations are sufficient to raise a question of fact as to whether FGIC reasonably relied on defendants' representations. (See CIFG Assur. N. Am., Inc. v Goldman, Sachs & Co., 106 AD3d 437, 437-438 [1st Dept 2013]; Ambac I, 2016 WL 7374210, at * 4-14 [extensively discussing pleading and proof of justifiable reliance and collecting authorities]; Ambac II, 2016 WL 7475831, at * 6.)
Morgan Stanley next contends that FGIC's claims with respect to any mortgage loans for which a breach notice was not given, prior to the commencement of this action, must be dismissed "because a condition precedent to suit has not been satisfied for such loans." Morgan Stanley further contends that any additional notices would be untimely, as the statute of limitations has passed. (Defs.' Memo. In Supp., at 15-16.) The repurchase protocols in the governing agreements, on which Morgan Stanley relies for this argument, both provide for repurchase of defective loans within 60 days of the earlier of either discovery by or notice to the securitizer of breaches of representations or warranties that materially and adversely affect the value of the mortgage loans or the interests of the certificate insurer or other specified parties. (RWA, § 4 [a]; PSA, §§ 2.03 [e]-[g].) 
As the Appellate Division has recently held, where an RMBS repurchase protocol provides for repurchase upon discovery or notice, and the contract claim is predicated on breaches of representations and warranties that the securitizer itself discovered, "no precommencement breach notice [i]s necessary." (U.S. Bank Natl. Assn. v GreenPoint Mtge. Funding, Inc., 2016 WL 7470015, at * 4 [1st Dept Dec. 29, 2016] [U.S. Bank/GreenPoint].) In contrast, where the contract claim is predicated on notice to the securitizer of breaches, whether, and to what extent, post-commencement breach notices may relate back depends on the facts, including whether timely breach notices were given prior to the commencement. (Compare id., at *5-6 with Nomura Home Equity Loan, Inc. v Nomura Credit & Capital, Inc., 133 AD3d 96, 108 [1st Dept 2015].)[FN8]
Here, Morgan Stanley acknowledges that there were some timely notices. [*6](Defs.' Memo. In Supp., at 5.) As the contents of these notices were not analyzed, however, the court declines on this record to determine the extent to which claims may be maintainable based on post-commencement breach notices. 
Finally, Morgan Stanley seeks to dismiss FGIC's claim for costs and expenses, including attorney's fees, in connection with this litigation. Such fees are sought under Insurance Agreement § 3.03 (d), which sets forth a reimbursement obligation of the Sponsor. The provision at issue is materially indistinguishable from the analogous provision, section 3.03 (c), in the Insurance Agreement at issue in this court's prior decision in Financial Guaranty Insurance Co. v Credit Suisse Securities (USA) LLC (2015 NY Slip Op 31451[U], 2015 WL 4627744, * 9 [Aug. 3, 2015, No. 651178/13]). For the reasons stated, and on the authorities cited, in that decision the court holds that section 3.03 (d) evidences a clear intent to cover legal fees incurred in intra-party enforcement actions, like that at issue.
It is hereby ORDERED that the motion of defendants Morgan Stanley ABS Capital I Inc., Morgan Stanley Mortgage Capital Holdings LLC, Morgan Stanley & Co. LLC, as successor to Morgan Stanley & Co. Inc., Morgan Stanley, and Saxon Mortgage Services, Inc. is denied. Provided that: Nothing herein shall be construed as holding that plaintiff Financial Guaranty Insurance Company may recover rescissory damages.
Dated: January 23, 2017
New York, New York
________________________
MARCY FRIEDMAN, J.S.C.
Footnotes

Footnote 1:MS, MSAC, MSMC, and MS & Co are collectively referred to in the introductory paragraph of the complaint and in this opinion as Morgan Stanley.

Footnote 2:Although not expressly denominated a claim pursuant to or "informed by" the Insurance Law, the seventh cause of action alleges that FGIC entered into the Transaction in reliance upon written warranties made by Saxon and MSAC, and that as a result of breaches of those warranties, "FGIC faced a materially greater risk of loss from agreeing to participate in the Transaction and to issue its Policy." (Compl., ¶¶ 249-251.)


Footnote 3:The parties in both FGIC cases are represented by the same counsel, and the cases were argued together.


Footnote 4:Ambac I pleaded just a fraudulent inducement claim, while Ambac II pleaded both fraudulent inducement and breach of warranty claims. 


Footnote 5:The cited provision of the Insurance Agreement, section 5.02 (a) (iii), is virtually identical to provision with the same number cited by Morgan Stanley in FGIC I.

Footnote 6:Sole remedy provisions are typical in RMBS contracts, and have been discussed at length in prior decisions in the RMBS litigation, including Nomura Home Equity Loan, Inc. v Nomura Credit & Capital, Inc. (133 AD3d 96 [1st Dept 2015]) and Financial Guaranty Insurance Co. v Credit Suisse Secs. (USA) LLC (2015 NY Slip Op 31451[U], 2015 WL 4627744, *4-7 [Aug. 3, 2015, No. 651178/13] [this court's prior decision collecting authorities]). This discussion will not be repeated here.


Footnote 7:FGIC notes in opposition that this branch of Morgan Stanley's motion "never specifically addresses" FGIC's third cause of action, for material breach of the Insurance Agreement, and its fifth cause of action, for reimbursement under the Insurance Agreement. (See Pl.'s Memo. In Opp., at 18-19 & n 15.) Morgan Stanley asserts in reply that "FGIC incorrectly asserts that defendants' opening brief does not address how the 'sole remedy' provision impacts FGIC's third cause of action." (Defs.' Reply Memo., at 8.) Morgan Stanley does not dispute, however, that its briefing on the sole remedy issue ignores the reimbursement provisions of the Insurance Agreement.

Footnote 8:A separate issue exists as to whether an action, if dismissed, may be refiled, where the breach notice condition precedent was not complied with prior to the commencement of the action, but the action was commenced within the statute of limitations. (See U.S. Bank Natl. Assn. v DLJ Mtge. Capital, Inc., 141 AD3d 431, 432 [1st Dept 2016] [holding, where Trustee commenced the action within the statute of limitations but did not meet the condition precedent to enforcement of the defendant's backstop repurchase obligation, that the "Trustee's timely claims were properly dismissed without prejudice to refiling pursuant to CPLR 205 (a)"], affg 2015 WL 1331268 [Mar. 24, 2015, No. 654147/12] [this court's prior decision, which this court adhered to on reargument, 51 Misc 3d 1205[A], 2016 NY Slip Op 50434[U], 2016 WL 1306279, Mar. 29, 2016, No. 654147/12]; ACE Secs. Corp., Home Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc., 52 Misc 3d 343 [Mar. 29, 2016] [this court's prior decision discussing at length the effect of failure to comply with the breach notice condition precedent on the timeliness of the action and on the availability of the CPLR 205 (a) savings provision, and discussing the Court of Appeals decision in ACE Secs. Corp. v DB Structured Prods., Inc., 25 NY3d 581 [2015]; see also U.S. Bank/GreenPoint, — AD3d &mdash, &mdash, 2016 NY Slip Op 08968, 2016 WL 7470015, at * 8 [recent dissent by Acosta, J.].)