Home Equity Mtge. Trust Series 2006-1 v DLJ Mtge. Capital, Inc. (2019 NY Slip Op 06576)





Home Equity Mtge. Trust Series 2006-1 v DLJ Mtge. Capital, Inc.


2019 NY Slip Op 06576


Decided on September 17, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 17, 2019

Friedman, J.P., Richter, Tom, Oing, Moulton, JJ.


156016/12 9866 653787/12 9865

[*1]Home Equity Mortgage Trust Series 2006-1, et al., Plaintiffs-Respondents,
v
DLJ Mortgage Capital, Inc. Defendant-Appellant, Select Portfolio Servicing, Inc., Defendant.
Home Equity Mortgage Trust Series 2006-5, etc., Plaintiff-Respondent,
v
DLJ Mortgage Capital, Inc. Defendant-Appellant, Select Portfolio Servicing, Inc., Defendant.


Orrick, Herrington & Sutcliffe LLP, New York (Daniel A. Rubens of counsel), for appellant.
Quinn Emanuel Urquhart & Sullivan, LLP, New York (William B. Adams of counsel), for respondents.



Orders, Supreme Court, New York County (Saliann Scarpulla, J.), entered January 9, 2019, which denied the motion of defendant DLJ Mortgage Capital, Inc. for partial summary judgment and granted plaintiffs' motion for partial summary judgment, unanimously affirmed, with costs.
Plaintiffs, four residential mortgage-backed securities trusts represented by the same trustee, allege breach of contract based on the "repurchase protocol" in the trusts' governing pooling and service agreements (PSAs). The repurchase protocol states that within 120 days of the earlier of the discovery by defendant, DLJ Mortgage Capital Inc. (DLJ), as "Seller" of the mortgage loans in the trusts, or DLJ's receipt of written notice from any party of a breach of any representation or warranty in the PSAs which "materially and adversely affects" the interest of certificateholders in any mortgage loan, DLJ must cure, substitute, or repurchase that defective loan.
The court correctly denied DLJ's motion for summary judgment seeking dismissal of those claims relating to loans, other than those emanating from the HEMT 2006-1 Trust (HEMT 2006-1), that plaintiffs failed to specifically identify in timely breach notices. The trustee's timely presuit letters, which stated that DLJ had placed defective loans into the trusts "on a massive scale," cited breach rates between 65% and 72% in the trusts, cautioned that the specified defective loans were "just the tip of the iceberg," and stated that its investigation into loans in the trusts was ongoing, put DLJ on notice that the breaches plaintiffs were investigating might uncover additional defective loans for which claims would be made. Therefore, plaintiffs' [*2]timely complaints that identified certain breaching loans may be amended to add the claims at issue, as they relate back to the original complaints (Nomura Home Equity Loan, Inc., Series 2006-FM2 v Nomura Credit & Capital, Inc., 133 AD3d 96, 108 [1st Dept 2015], affd as mod 30 NY3d 572 [2017]; Koch v Acker, Merrall & Condit Co., 114 AD3d 596, 597 [1st Dept 2014]).
With regard to HEMT 2006-1, for which no timely or "ripe" breach notices were sent, DLJ does not challenge the court's alternative ruling that sufficient evidence was presented to raise an issue of fact as to whether it independently discovered material breaches. This provides a separate ground for finding that the repurchase protocol was triggered for the breaching loans, without regard to the issue of relation back or the issue of whether the Trustee sent a timely breach notice for HEMT 2006-1 (see U.S. Bank N.A. v GreenPoint Mtge. Funding, Inc., 147 AD3d 79, 85 [1st Dept 2016]; Nomura, 133 AD3d at 108-109).
The court correctly granted plaintiffs' motion and denied defendant's motion regarding the use of statistical sampling to prove plaintiffs' breach of contract claims for both liability and damages. In 2013, the trustee sought approval from the court for the use of statistical sampling to prove liability and damages for its claims. On November 18, 2013, the court (Schweitzer, J.) ordered that the trustee may use statistical sampling to prove liability and damages, and ordered the parties to meet and confer as to the sample to be used. DLJ noticed an appeal from this order, but failed to withdraw or perfect the appeal. Thereafter, the parties spent four years agreeing on the correct loan files and underwriting guidelines for the sample loans, and engaged in extensive expert discovery. In light of DLJ's failure to pursue an appeal from the court's November 18, 2013 order, and given the extensive discovery already taken place on this issue, we find no reason in this case to disturb the court's decision to permit the use of statistical sampling to prove liability and damages.
To the extent defendant challenges the sample size or the particular loans chosen to be included within the sample, defendant will have a further opportunity to raise those arguments, as the motion court noted that "[i]ssues concerning the sufficiency of the sample itself will be addressed pre-trial in motions in limine."
The court correctly granted plaintiffs' motion for summary judgment to the extent that it sought a ruling that the phrase a breach that "materially and adversely" affected the interest of certificateholders, as stated in the repurchase protocol, is not limited to loans in default, and applies to any breach that "materially increased a loan's risk of loss." This Court has held at the summary judgment stage that a loan need not be in default for there to be a breach that "materially and adversely" affected the plaintiff's interest (MBIA Ins. Corp. v Countrywide Home Loans, Inc., 105 AD3d 412, 413 [1st Dept 2013]). The motion court's further conclusion that a breach need only have "significantly increased a loan's risk of loss" is consistent with the plain meaning of the phrase, and still allows for a fact-specific determination at trial (see Assured Guar. Mun. Corp. V Flagstar Bank, FSB, 892 F Supp 2d 596, 602).
The court correctly concluded that the repurchase price, as defined in the PSAs, applies to liquidated and non liquidated
loans, and thus, includes accrued interest on loans after they have been liquidated (Nomura, 133 AD3d at 107).
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: SEPTEMBER 17, 2019
CLERK