OPINION OF THE COURT
Shirley Werner Kornreich, J.
Motion sequence numbers 001 and 002 are consolidated for disposition.
Defendants WMC Mortgage, LLC (WMC), J.P. Morgan Mortgage Acquisition Corporation (JPMMAC), and J.P. Morgan Chase Bank, N.A. (JPMC Bank, and together with JPMMAC, JPMorgan) move, pursuant to CPLR 3211, to dismiss the complaint. Defendants’ motions are granted for the reasons that follow.
I. Procedural History and Factual Background
This is a residential mortgage backed securities (RMBS) put-back action. Familiarity with this type of case is presumed.[1] (See generally Morgan Stanley Mtge. Loan Trust 2007-2AX *231 [MSM 2007-2AX] v Morgan Stanley Mtge. Capital Holdings LLC, 2014 NY Slip Op 33023 [U], *1-2 [Sup Ct, NY County 2014, Friedman, J.] [collecting cases]; see also Federal Hous. Fin. Agency v Nomura Holding Am., Inc., 2015 WL 2183875, *5-13, 2015 US Dist LEXIS 61516, *18-43 [SD NY, May 11, 2015, No. 11CV6201 (DLC), Cote, J.] [detailed discussion of the origination and securitization process].) This action concerns the J.P. Morgan Mortgage Acquisition Trust, Series 2006-WMC2 (the Trust), for which JPMMAC was the sponsor, JPMC Bank is the servicer, and WMC was the originator. Pursuant to a mortgage loan sale and interim servicing agreement, dated as of July 1, 2005 (the MLSA) (see document No. 7),[2] JPMMAC purchased loans from WMC, then sold some of those loans to a “depositor” (in this case, a nonparty JPMorgan affiliate), and the loans were transferred to the Trust pursuant to a pooling and servicing agreement (the PSA) (see document No. 8), which had a closing date of June 28, 2006.
On November 1, 2013, plaintiff, The Bank of New York Mellon, the securities administrator for the Trust, commenced the instant action seeking to put back nonconforming loans (i.e., those that do not conform to their applicable representations and warranties) by filing a summons with notice. Plaintiff filed a complaint on December 23, 2013. (See document No. 6.)
Defendants originally moved to dismiss on March 14, 2014, arguing that plaintiffs put-back claims were time-barred under ACE Sec. Corp. v DB Structured Prods., Inc. (112 AD3d 522 [1st Dept 2013]), a decision issued by the Appellate Division on December 19, 2013. It is undisputed that, as in ACE, the transaction closed more than six years before this action was commenced. Therefore, in opposition, plaintiff attempted to distinguish this action from ACE, arguing that differences in the transaction and its claims render the case timely. Oral argument was held on May 6, 2014. {See document No. 82 [May 6, 2014 tr].)
In an order dated June 27, 2014 (document No. 83), the court stayed this action pending a decision by the Court of Appeals in ACE. On June 11, 2015, the Court of Appeals affirmed the ruling of the Appellate Division. (See ACE Sec. Corp., Home *232 Equity Loan Trust, Series 2006-SL2 v DB Structured Prods., Inc., 25 NY3d 581 [2015].) Consequently, it is now the law in New York that to timely commence a put-back action, the trustee must commence suit within six years of the PSA’s closing. As noted above, it is undisputed that this action was commenced after this six-year period had elapsed.[3] By order dated June 15, 2015 (document No. 90), the court directed further briefing to afford plaintiff the opportunity to argue that ACE does not render this case time-barred. The parties submitted supplemental briefing (see document No. 91-98), and the motions have now been marked fully submitted.
II. Discussion
Plaintiff proffers two arguments as to why this action is not time-barred under ACE. First, plaintiff argues that the MLSA expressly provides that a put-back claim does not accrue until defendants breach the repurchase protocol and that such accrual provision is a substantive condition precedent to suit which is enforceable under well-settled New York law, as well as ACE. Indeed, plaintiff goes so far as to argue that “ACE mandates denial of Defendants’ motions to dismiss.” (See document No. 91 at 4.) Defendants disagree, arguing that the accrual provision is a procedural condition precedent and, in any event, is unenforceable under New York law, which, defendants further aver, was not disturbed by ACE. Plaintiff’s second argument is that it has pleaded a valid cause of action against JP-Morgan for “failure to notify” which, plaintiff contends, may be maintained as an independent cause of action and which is not time-barred. Defendants, again, disagree, arguing that every court to consider these arguments, including this one, has rejected them. For the reasons set forth below, defendants are correct in all respects and this action is dismissed as time-barred.
A. The MLSA’s Accrual Provision
Section 7.03 of the MLSA, titled “Remedies for Breach of Representations and Warranties,” contains what is colloquially *233 known as the “repurchase protocol.” (See document No. 8 at 42.) It provides, inter alia, that
“[w]ithin sixty (60) days of the earlier of either discovery by or notice to either the Seller or the Servicer of any breach of a representation or warranty which materially and adversely affects the value of a Mortgage Loan or the Mortgage Loans or the interest of the Purchaser therein, the Seller or the Servicer, as the case may be, shall use its commercially reasonable efforts promptly to cure such breach in all material respects and, if such breach cannot be cured, the Seller shall repurchase such Mortgage Loan or Mortgage Loans at the Repurchase Price.” (See id.)
Section 7.03, which spans approximately two single-spaced pages, concludes by stating:
“It is understood and agreed that the obligations of the Seller or the Servicer, as applicable, set forth in this Subsection 7.03 to cure, repurchase or substitute for a defective Mortgage Loan and/or to indemnify the Purchaser constitute the sole remedies of the Purchaser respecting a breach of the representations and warranties set forth in Subsections 7.01 and 7.02.” (See id. at 44 [emphasis added].)
The subject accrual language appears in the second to last paragraph of section 7.03, which provides:
“Any cause of action against the Seller or the Servicer, as applicable, relating to or arising out of the breach of any representations and warranties made in Subsection 7.01 or 7.02 shall accrue upon (i) discovery of such breach by the Purchaser or notice thereof by the Seller or the Servicer to Purchaser, (ii) failure by the Seller or the Servicer, as applicable, to cure such breach, repurchase such Mortgage Loan as specified above, substitute a Substitute Mortgage Loan for such Mortgage Loan as specified above and/or indemnify the Purchaser, and (iii) demand upon the Seller or the Servicer, as applicable, by the Purchaser for compliance with the terms of this Agreement.” (See id. at 43-44 [emphasis added].)
The word “and” prior to step three indicates that a put-back claim does not accrue until plaintiff serves a demand on defendants after defendants refuse to cure or repurchase an *234 allegedly nonconforming loan. Plaintiff, therefore, contends that even though ACE held that put-back claims accrue at closing, the holding in ACE was a default rule that is applicable only when RMBS contracts are silent on accrual. Plaintiff avers that where, as here, the MLSA is not silent, and expressly provides a specific accrual date, that accrual date must govern for statute of limitations purposes.
There is much intuitive appeal to plaintiff’s position. Plaintiff is basically arguing that the court should respect sophisticated parties’ express contractual decisions with respect to accrual of their claims with the same level of deference courts ordinarily provide to all other unambiguous contractual provisions. (See Quadrant Structured Prods. Co., Ltd. v Vertin, 23 NY3d 549, 559-560 [2014] [“In construing a contract we look to its language, for ‘a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms’ ”], quoting Greenfield v Philles Records, 98 NY2d 562, 569 [2002].) To wit, in the very decision ACE overturned, this court noted that “[i]t is highly peculiar that the PSA would leave out an effective six-year statute of repose if such a limitations period were actually contemplated by the parties.” (See ACE Sec. Corp. v DB Structured Prods., Inc., 40 Misc 3d 562, 567 [Sup Ct, NY County 2013].) Here, the parties not only set forth a comprehensive repurchase protocol, they even set forth a precise three step process that would be used to define and determine the accrual of a claim for breach of section 7.03—plaintiff’s sole remedy for defendants’ breaches of the MLSA’s representations and warranties.
However, intuition, as we know, does not always carry the day. The Court of Appeals has reaffirmed this State’s longstanding public policy of providing for statute of limitations rules that take precedence over competing contractual and equitable considerations. (See ACE, 25 NY3d at 593-594 [discussing the paramount “objectives of finality, certainty and predictability”].) The ACE Court considered and rejected an RMBS trustee’s arguments regarding why put-back claims should not be considered to accrue at closing. (See ACE, 25 NY3d at 593-597.) That holding, as plaintiff concedes, is applicable to this case. The Court, however, also addressed what it deemed to be “[t]he Trust’s strongest argument”: “that the cure or repurchase obligation was a substantive condition precedent to suit that delayed accrual of the cause of action.” (Id. at 597 [emphasis added].) It rejected this argument. In holding that pre-suit repurchase demand is a procedural (as opposed to *235 substantive) condition precedent, the Court distinguished “between a demand that is a condition to a party’s performance and a demand that seeks a remedy for a preexisting wrong.” (Id.) The Court reasoned that “[t]he Trust suffered a legal wrong at the moment DBSP allegedly breached the representations and warranties,” that “the Trust was just limited in its remedies for that breach,” and “[h]ence, the condition was a procedural prerequisite to suit.” (Id. at 597-598.)
There is no difference here. Though ACE did not involve an accrual provision, the substance of the pre-suit demand process in the MLSA is substantively similar to the contracts in ACE and, indeed, is substantially similar to the typical governing contracts in put-back actions. Consequently, the court cannot hold that the repurchase protocol in section 7.03 of the MLSA is a substantive condition precedent without contravening ACE. Moreover, every New York court to consider the issue has held that the repurchase protocol is a procedural condition precedent. (See e.g. U.S. Bank N.A. v Greenpoint Mtge. Funding, Inc., 2015 NY Slip Op 30307[U], *8-10 [Sup Ct, NY County 2015, Friedman, J.]; Deutsche Bank Natl. Trust Co. v Quicken Loans Inc., 2014 WL 3819356, *3-4, 2014 US Dist LEXIS 106710, *7-14 [SD NY, Aug. 4, 2014, No. 13 Civ 6485 (PAC), Crotty, J.]; Lehman XS Trust, Series 2006-GP2 v GreenPoint Mtge. Funding, Inc., 2014 WL 1301944, *3, 2014 US Dist LEXIS 47888, *9-13 [SD NY, Mar. 31, 2014, Nos. 12 Civ 7935 (ALC/HBP), 12 Civ 7942 (ALC/HBP), 12 Civ 7942 (ALC/HBP), Carter, Jr., J.]; Lehman XS Trust, Series 2006-4N ex rel. U.S. Bank N.A. v Greenpoint Mtge. Funding, Inc., 991 F Supp 2d 472, 478 [SD NY 2014, Scheindlin, J.].)
Although Bear Stearns Mtge. Funding Trust 2006-SL1 v EMC Mtge. LLC (2015 WL 139731, 2015 Del Ch LEXIS 9 [Jan. 12, 2015, CANo. 7701-VCL]) holds otherwise, it is a Delaware case in which Vice Chancellor Laster held that Delaware law recognizes accrual provisions as conditions precedent to suit and permits such provisions to extend the statute of limitations. (See 2015 WL 139731, *10-12, 2015 Del Ch LEXIS 9, *29-36.) Delaware law, thus, appears to differ from New York law.[4] However, the contracts in this action are governed by New York law. This court will not contravene ACE, nor will it deviate from the clear consensus of every New York federal and state court trial court judge to consider this issue. (See U.S. *236 Bank, 2015 NY Slip Op 30307[U], *8 [“(t)he accrual provision cannot serve to delay the accrual of the breach of contract cause of action for purposes of the statute of limitations”], citing John J. Kassner & Co. v City of New York, 46 NY2d 544, 551 [1979] [“If the agreement to ‘waive’ or extend the Statute of Limitations is made at the inception of liability it is unenforceable”]; see Lehman, 2014 WL 1301944, *3, 2014 US Dist LEXIS 47888, *9-12 [same].) Contrary to plaintiff’s argument, ACE did not purport to abrogate Kassner, nor does this court believe Kassner was abrogated sub silentio. Accordingly, the MLSA’s accrual provision does not render this action to be timely.
B. Failure to Notify
To the extent this court has not expressly ruled on whether a “failure to notify” claim is an independent cause of action, it does so now, and holds that such an independent cause of action is not viable. Plaintiff bases this claim on section 7.03 of the MLSA and section 2.03 of the PSA, i.e., the repurchase protocol, which provide that if defendants discover a material and adverse breach of the representations and warranties, defendants must “give prompt written notice” to plaintiff. (See document No. 8 at 42; see document No. 7 at 29.) Virtually every court to consider this language, particularly where, as here, the MLSA contains a “sole remedy” clause, has concluded that a plaintiff has no independent cause of action for failure to notify. Plaintiff’s remedy is the repurchase protocol, and under ACE, that remedy is no longer available since a claim for the underlying breach of the representations and warranties is time-barred. The ACE Court recognized this: “[C]ure or repurchase obligation [is] not a separate and continuing promise of future performance; rather, it [is] the Trust’s sole remedy in the event of [the bank’s] breach of representations and warranties. Viewed in this light, the cure or repurchase obligation [is] not an independently enforceable right.” (ACE, 25 NY3d at 599.) If the “cure or repurchase obligation” is not an independent promise of future performance, the bank’s obligation to notify the trustee cannot be considered to be an independent obligation since both are components of the repurchase protocol. Holding otherwise would contravene ACE.
Indeed, this holding was the prevailing view prior to ACE. (See Deutsche Bank Natl. Trust Co. v Flagstar Capital Mkts. *237 Corp., 2015 NY Slip Op 31787[U], *6 [Sup Ct, NY County 2015, Friedman, J.] [“this court has previously held that a seller’s failure to notify the trustee of breaching loans is also not an independent breach of contract. Rather, non-compliance with the notice requirement under the repurchase protocol, a remedial provision, does not give rise to an independent breach of contract by the seller, or expand the remedies available against the seller under the contract”], citing Morgan Stanley Mtge. Loan Trust 2006-13Arx v Morgan Stanley Mtge. Capital Holdings LLC, 2014 NY Slip Op 32520[U], *3 [Sup Ct, NY County 2014, Friedman, J.] [“Th(e) cause of action for failure to notify must be rejected, as it is yet another way of asserting that breaches of the repurchase protocol constitute independent breaches of the contract which are not subject to the limited remedy for breach of the mortgage representations agreed to by the parties”];[5] see also Bear Stearns, 2015 WL 139731, *17, 2015 Del Ch LEXIS 9, *50 [“(N)o matter the basis for plaintiff’s put-back cause of action, it is a claim for an amount of money under the Repurchase Protocol for non-compliant loans. Consequently, much of the parties’ dispute . . . (including) how to properly characterize the breach (e.g. failure to repurchase vs. failure to notify) . . . does not merit further discussion”], quoting WMC4, 2013 NY Slip Op 51934[U], *2-3.) After ACE, the notion that a separate failure to notify claim is viable should be put to rest. (See Bank of NY Mellon v WMC Mtge., LLC, 2015 WL 4163343, *2 n 4, 2015 US Dist LEXIS 89739, *9 n 4 [SD NY, July 10, 2015, No. 12CV7096 (DLC), Cote, J.].) Accordingly, it is ordered that the motions by defendants WMC Mortgage, LLC, J.P. Morgan Mortgage Acquisition Corporation, and J.P. Morgan Chase Bank, N.A. to dismiss the complaint are granted, and the Clerk is directed to enter judgment dismissing the complaint with prejudice.

. The court also assumes familiarity with its decision on the motion to dismiss in Bank of N.Y. Mellon v WMC Mtge., LLC (41 Misc 3d 1230[A], 2013 NY Slip Op 51934[U] [Sup Ct, NY County 2013] [WMC4]). WMC4 is a related RMBS put-back case with virtually identical contracts. The court’s decision in WMC4 rejected interpretations of the contracts that defendants argued warranted dismissal. Hence, defendants agreed not to reargue those issues on this motion. Instead, defendants’ briefs only address their statute of limitations arguments. Defendants, however, preserved their right to appeal the contract interpretation issues.

. Plaintiff’s supplemental briefs erroneously refer to the MLSA as the “MLPA,” an acronym that ordinarily stands for “Mortgage Loan Purchase Agreement.” (See e.g. ACE Sec. Corp. Home Equity Loan Trust, Series 2007-HE3 v DB Structured Prods., Inc., 5 F Supp 3d 543, 548 [SD NY 2014].) The MLSA in this case is tantamount to the MLPA in other actions.

. It should be noted that the statute of limitations did not actually expire on June 28, 2012, six years after closing. Rather, on June 26, 2012, the parties executed a tolling agreement, which expired on December 26, 2012. Defendants concede that the tolling agreement extended the statute of limitations to December 28, 2012. In any event, plaintiff did not commence this action until November 1, 2013, more than seven years after closing, and approximately 10 months after the tolling agreement expired.

. It should be noted, however, that courts in other jurisdictions, where the RMBS contracts are not governed by New York law, have refused to fol *236 low ACE. (See ResCap Liquidating Trust v EquiFirst Corp., 2015 WL 5008722, *1-2, 2015 US Dist LEXIS 109932, *2-6 [D Minn, Aug. 20, 2015, Civ No. 15-1569 (PAM/HB)].)

. Justice Friedman did note “that there is authority that a cause of action for breach of an obligation to notify may be pleaded against the servicer in an RMBS transaction, where the Trustee’s relief against the servicer is not limited by the sole remedy provision.” (See Morgan Stanley, 2014 NY Slip Op 32520 [U], *3 n, citing SACO I Trust 2006-5 v EMC Mtge. LLC, 2014 NY Slip Op 31432[U], *23-25 [Sup Ct, NY County 2014, Bransten, J.].) In SACO, Justice Bransten held that a failure to notify claim was validly pleaded against a servicer not bound by the sole remedy clause, but that “damages for this claim are limited to repurchase or damages in the amount of the repurchase price.” (2014 NY Slip Op 31432[U], *24.)